No. 2995

Second Circuit

———

SCRIPTURE v. T. & P. RY. CO.

———

(March 12, 1929. Opinion and Decree.)

———

Murff & Perkins, of Shreveport, attorneys for plaintiff, appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. By this action plaintiff seeks to recover from defendant damages for an alleged breach of contract of carriage.

On September 14, 1924, he delivered to defendant, at Fort Worth, Tex., 22 mules and horses to be transported, under the uniform live stock contract prescribed by the Interstate Commerce Commission, to Shreveport, La.

He alleges that when the animals were delivered to him by defendant, one of them, a mare mule, was weak and breathing fast, indicating that she had been injured in transit by being jammed, and that she died three or four days thereafter, although during that time it received proper attention.

Defendant denied that the animal was in good condition when received by it, and denied that it was injured in transit by being jammed or otherwise.

On these issues the case was tried, and there was judgment rejecting plaintiff's demands and dismissing his suit, and he appealed.

OPINION

Numerous interesting questions of law are presented in the briefs filed by plaintiff and defendant; but we only find it necessary, in order to a correct decision of the case, to determine whether the evidence shows defendant failed in any duty to plaintiff.

G. W. Powers testified that he was a conductor in the employ of the defendant and was in charge of the train that brought the animals to Shreveport; that he inspected the car in which the animals were when the train was ready to leave Fort Worth, and that none of the animals were down and all were apparently in good condition; that the train was a through one and there was no switching of it; that there were no jolts or jars of the cars composing the train and that none of the animals was down during the journey; and that the car in which the animals were loaded was that one of the train immediately next to the locomotive, and that that is the least jolted or jarred car in a train.

The evidence shows that the animal was free of lesions and bruises when delivered to plaintiff by defendant, and that the only indication she gave of being then unwell was that she appeared drawn up.

W. B. Burris, a veterinarian, testified that he examined the animal three times; once in the defendant's stock pen in Shreveport, La., and:

"Q. What was its appearance?
"A. Pulse weak; breathing very rapid; droopy. Diagnosis withheld for the time being, until further examination by me.
"Q. Did you make an examination at that time to ascertain whether there were any marks about the mule?
"A. Yes, sir; found no evidence of external bruises.
"Q. No scratches or skinned places at all?
"A. No, sir.
"Q. Did you examine the mule subsequently?
"A. Yes, sir.
"Q. Where?
"A. T. & P. stock pen, and again at Benton.
"Q. How long after the first examination was the second examination at the stock pen?
"A. I don't remember exactly; a day or two.
"Q. Did you make a diagnosis on this second examination?
"A. Yes, sir.
"Q. What was your diagnosis?
"A. Pneumonia at that time.
"Q. Did you see the animal subsequent to that?
"A. Yes, sir.
"Q. Where?
"A. I saw her at Benton.
"Q. What was its condition?
"A. I diagnosed it as pleuro-pneumonia; a combination of pneumonia and pleurisy.
"Q. Was there anything about its condition in its development from your examination that suggested any traumatic injury?
"A. None, whatever."

Asked what caused the death of the mule, he said:

"Well, the mule died from pleuro-pneumonia, due to lowered resistance from having had influenza, or from some other respiratory disease, previous to the time shipped; that was my conclusion; that was typical among mules during this time in 1924 we had a condition among mules in the form of influenza which assumed a very violent type and for the time we were at a loss as to what treatment should be used, and until great research work was done we hardly knew how to handle them."

"Q. When you examined that animal, was Mr. Scripture present?

"A. Yes, sir.

"Q. Did you at that time state to him that your conclusion was, that it had been, the injured condition was caused by reason of being jammed in transit?

"A. No, sir."

There is nothing in the record impeaching this testimony, and the trial judge, who saw the witness and heard him testify, accepted it as correct, and no good reason appears for our not doing so.

The evidence satisfies us that the death of the animal was not caused by any fault or neglect of the defendant, but to purely natural causes for which the defendant was not responsible.

The judgment appealed from is correct, and accordingly it is affirmed.